UNIVERSITY OF THE STATE OF NEW YORK
STATE EDUCATION DEPARTMENT
---------------------------------X
In the Matter of the Charges
Preferred by                          X

POUGHKEEPSIE CENTRAL SCHOOL            X
DISTRICT AND DR. ERIC J. ROSSER,
Superintendent of Schools             X        **Opinion and**
                                               **Order**
                  "Employer"          X

          -and-                       X

CAROL MELTON                          X

                  "Respondent"        X

Pursuant to Education Law Sec.        X
3020-a.
---------------------------------X


**APPEARANCES**

> **For Employer**
> BOND, SCHOENECK & KING, P.L.L.C.
>    Kate I. Reid, Esq.

> **For Respondent**
> BLACK AND LATINO COALITION
>    Gregory Tron Melton


**BEFORE:** Julie A. Torrey, Esq., Hearing Officer

## BACKGROUND

On or about November 4, 2020, the Poughkeepsie City School District ("the District") and Dr. Eric J. Rosser, Superintendent of Schools for the Poughkeepsie City School District, preferred Charges against Carol Melton, a licensed tenured Teaching Assistant employed by the School District, pursuant to Section 3020-a of the New York Education Law ("the Charges"). The District alleges Respondent engaged in conduct which constitutes gross and continued insubordination, misconduct, incompetence and/or conduct unbefitting a Teaching Assistant which warrants the termination of her employment.

Respondent disputes the allegations and contends the School District lacks just cause to terminate her. Respondent asks for reinstatement and a make whole remedy.

Some of the basic facts are not in dispute.

Respondent works as a Teaching Assistant at the District and has been employed in that capacity for twenty one (21) years. (T. 625). Respondent was initially hired as a Computer Lab Teaching Assistant, and over the course of her career with the District, Respondent has worked in several of the District's buildings to create, build and improve the computer lab facilities for the District. (T. 626).

During the time period covered by these charges, Respondent was assigned as a Teaching Assistant to the Morse Elementary School. Respondent reported to Principal Nadine Elting-Dargan. (T. 207). Elting-Dargan has worked for the District for twenty seven (27) years. (*Id.*).

In the Spring of 2020, the Governor of the State of New York closed all schools due to the COVID-19 pandemic. Children attended school remotely from March 2020 until the end of the 2019-2020 school year. All teaching staff, including Teaching Assistants, performed their duties remotely during this period of time. (T. 30, 506).

During the Summer of 2020, the District determined students would initially continue remote instruction but directed all District personnel, except Teachers, to report for in-person work at the commencement of the 2020-2021 school year. (T. 172-73). The administrative decision was communicated to personnel in a memorandum from Assistant Superintendent Dr. Timothy Wade, dated September 3, 2020. (D. Ex. 1).

Wade's memo advised all staff that on September 9, 2020, "all employees will be expected to report in person to their assigned buildings. . . ." (D. Ex. 1). It was noted employees were required to complete a "Health Check survey" no earlier than two (2) hours before entering the building. (*Id.*). Wade notified employees they could find the survey link on the employees' school building webpage

or by scanning a QR code at the front of each building.  Paper copies of the survey were also made available. (*Id.*).

Employees were directed if they were unable to enter a building because they answered "yes" to any question on the Health Check survey, they were required to be evaluated by a medical provider and provide documentation to the building principal or direct supervisor. (D. Ex. 1).

Health protocols were instituted at District buildings and staff in attendance were required to mask and socially distance themselves. (T. 571).

At the commencement of the school year, Elting-Dargan assigned Respondent to assist two (2) teachers, Howard and Craigg, with their classes. (T. 208, 312, 682).  Elting-Dargan testified Respondent was assigned to work from the classroom in the Morse School computer lab. (T. 209).

On September 9, 2020, Elting-Dargan emailed Respondent and other Teaching Assistants at the Morse School building advising,

> "Per Dr. Wade, Teaching Assistants are to report to the building daily.  I know this is not what I communicated earlier however this misunderstanding was completely on me.  I apologize for the inconvenience.  We can revisit this discussion tomorrow when I reach out for clarity and ascertain if I can do something different at Morse.  I will see you all tomorrow morning." (D. Ex. 13).

Elting-Dargan testified she advised all Teaching Assistant on September 9, 2020, that they would no longer be permitted to work from home. (T. 211).  All building Teaching Assistants reporting to

Elting-Dargan, other than Respondent, complied with the directive.
(T. 213).

On September 14, 2020, Elting-Dargan emailed Respondent noting
she was marked absent on September 8, 9, 10 and 11, 2020.  Elting-
Dargan reminded Respondent she was required to report to the
building. (D. Ex. 2).

On September 14, 2020, Respondent replied to Elting-Dargan's
email asking for clarification on the following questions:

> "What are the Teaching Assistants current function at Morse? In
> what capacity (quantity and quality) are the Teaching
> Assistants there contributing to, assisting and supporting the
> teachers and students in the Google classroom and Google Meets?
> How are the TA's assisting the teaching in advancing the
> education of the students? . . . .  Additionally, I am at an
> advanced/expert level on Google Classroom and Google Meets as
> well as other programs/software that I use to not just assist
> but also facilitate in the virtual environment.  I have helped
> students and parents all week and weekend and at all times of
> the day and night (since March) to log on, navigate the
> platform, post assignments etc. and provide technological
> expertise.  To not use my skills would be a great disservice to
> our students, our parents and our community."
> (D. Ex. 2).

Elting-Dargan forwarded Respondent's email to Wade and Wade
responded on September 14, 2020, with an email to Respondent
stating, "[t]he current function of the teaching assistants are to
assist teachers with instruction.  To that end, each principal has
provided spaces for teaching assistants to utilize in their
building. . . Now that the expectations are clear, I would expect
that beginning tomorrow you will be attending work in person . . .
." (D. Ex. 2).

Respondent continued to report to work virtually after receipt of Wade's September 14, 2020 email. (*See* D. Ex 15).

On September 28, 2020, Wade sent a letter to Respondent stating, "You are directed to report to Morse Elementary School. For each day you do not physically attend, a leave day (sick) will be deducted from your accrual." (D. Ex. 4). Wade attached a copy of the September 3, 2020 "Welcome Back Letter". (*Id.*).

Respondent continued to report to work virtually after receipt of Wade's September 28, 2020 letter. Although the District stated it would deduct sick days for the period Respondent did not report to her assigned building, it did not do so initially. (T. 109).

On or about October 15, 2020, Elting-Dargan emailed Respondent to advise Respondent was required to come to the building to remove locks and cabinet items from the computer lab in Room 214 and move those items to Room 106. Respondent was advised she must move the items no later than Thursday, October 22, 2020, to enable to school to prepare for a new classroom. (D. Ex. 16). When Respondent did not respond, Elting-Dargan sent another email on October 21, 2020, directing Respondent to come to the building to remove the locks from the cabinets in Room 214. (*Id.*). Respondent did not come to the building to remove the requested items.

On October 21, 2020, Respondent wrote to Elting-Dargan and stated,

"My immediate question and concern is, are you stating to me that I am to disregard all the instructions on the Morse Health Form which states, 'Please complete information each day prior to arriving to Morse Elementary School. If you answer yes to any questions DO NOT come in, and you will be contacted.' If you are stating that, yes, I am to disregard all the instructions on the Morse Health Form and come into the building anyway, then I would need you to provide in writing a clear, concise email/letter stating this. This letter should also include that you as an administrator and representative of the Poughkeepsie City School District are personally responsible and will be held accountable for any and all situations arising from this and I will not be held liable for any effects that may occur if I enter the building. . . ." (D. Ex. 17).

On October 21, 2020, Wade again wrote to Respondent stating,

"[Y]ou have not complied with my memorandum of September 28, 2020, which directed you to return to work at Morse Elementary School. You are expected to report to work without further delay. If you do not return to work on or before October 23, 2020, the District shall construe your failure to report as an abandonment of your position as a Teaching Assistant in the Poughkeepsie City School District." (D. Ex. 5).

On October 21, 2020, Respondent wrote to the Wade and stated,

"My immediate question and concern is, are you stating to me that I am to disregard all the instructions on the Morse Health Form which states, 'Please complete information each day prior to arriving to Morse Elementary School. If you answer yes to any questions DO NOT come in, and you will be contacted.' If you are stating that, yes, I am to disregard all the instructions on the Morse Health Form and come into the building anyway, then I would need you to provide in writing a clear, concise email/letter stating this. This letter should also include that you as an administrator and representative of the Poughkeepsie City School District are personally responsible and will be held accountable for any and all situations arising from this and I will not be held liable for any effects that may occur if I enter the building. . . ." (D. Ex. 6).

On October 21, 2020, Wade responded by email to Respondent stating,

"If you require Americans with Disabilities Act accommodation because of COVID-19, please email a request to Deanna Singleton so that we may provide you the application for appropriate documentation. If you have been exposed to COVID-19 and you have received an order of quarantine from the County Health Department then you will need to provide the order of Quarantine from the Dutchess County Health Department. You have written regarding your concerns regarding the technology within the District. At no time have you communicated that you have been unable to attend work because of a qualifying condition. You are directed to communicate with your supervisor, Ms. Elting-Dargan. You are expected to come to work as directed by the letter sent to you." (D. Ex. 6).

Respondent did not submit a request for an accommodation pursuant to the Americans with Disabilities Act.

Respondent did not complete the District Health Check form on any date up through and including November 18, 2020. (D. Exs. 19, 20).

During the hearing, Respondent advised she had been completing the Morse Staff Health Check form on most school days from September 2020 through December 2020. (D. Ex. 21; R. Ex. 1). Each time Respondent completed the survey, she answered "yes" to Question 1. (D. Exs. 21, 22).

Elting-Dargan testified the Morse Staff Health Check form was not a District approved form and was used only for a few days before the start of the 2020-2021 school year.

On or about October 26, 2020, Respondent covered teaching a virtual classroom for Craigg who was absent for two (2) weeks due to a death in the family. (D. Ex. 23). Elting-Dargan advised

Respondent she was not eligible to receive pay as a substitute teacher. (*Id.*).

## 3020-a Charges

On or about November 4, 2020, the District's Board of Education voted to commence and serve charges against Respondent pursuant to Section 3020-a of the New York State Education Law. (D. Ex. 1).

On or about December 21, 2020, Respondent sent an email to the District attaching a letter from CareMount Medical, dated November 24, 2020, stating,

> "Carol Melton is currently under my medical care and may not return to work at this time ( _ visits since September 2020) will reassess when her symptoms improve [sic]."

The letter was electronically signed by Yazholi Kanikkannan. (D. Exs. 7, 8).

## Section 913 Exam

On or about January 13, 2021, the District's Board of Education authorized the Superintendent to direct a comprehensive medical examination and evaluation of Respondent in accordance with the provisions of Section 913 of the New York Education Law. (D. Ex. 9). On January 20, 2021, and again on January 28, 2021, Wade directed Respondent to attend a Section 913 examination with the District's medical examiner, Dr. James. (D. Exs. 10, 12). The medical release attached to the order identified a Dr. Jose Soha. (D. Ex. 11).

Respondent refused to attend the 913 exam.

Respondent was removed from the payroll on or about February 16, 2021.  Respondent's District account was shut down in February 2021 when Respondent refused to attend the Section 913 examination. (T. 174).  The District's practice is to shut down an employee's access when that employee is removed from the payroll. (T. 175).

## Section 3020-a Proceedings

On or about February 13, 2021, I was selected to serve as a Hearing Officer in this matter.

On or about April 7, 2021, the District filed Amended Charges against Respondent ("Amended Charges"), and on or about April 22, 2021, the District filed a Notice of Motion to Amend the Charges. On or about April 21, 2021, Respondent filed a Motion to Dismiss the Charges.

On April 27, 2021, I held a pre-hearing conference and heard oral argument on the parties' respective motions.  On or about May 6, 2021, in an eight (8) page Order, I granted the District's Motion to Amend the Charges.  Also, on or about May 6, 2021, in an eight (8) page Order, I denied the Respondent's Motion to Dismiss the Charges because material issues of fact remained on all elements of the Charges.

A hearing on the merits of the Amended Charges was held before me by remote videoconference on June 1, 2021.  Scheduled hearings on June 3, 2021, June 10, 2021, and June 11, 2021, were adjourned due to Respondent's health.  The hearing was continued before me by

remote videoconference on June 30, 2021, July 1, 2021, July 2, 2021, July 6, 2021, and July 9, 2021.

On the fourth day of hearing, July 2, 2021, the parties reached an agreement to resolve and permit the District to withdraw Charges 4 and 10 from the Amended Charges pending before me. (T. 585).

At the hearing, the District was represented by counsel and the Respondent, at her request, was represented by Gregory Melton of the Black and Latino Coalition. Both parties were afforded full and fair opportunity to adduce evidence, present witnesses, conduct direct and cross-examination, make oral argument and otherwise support their respective positions. There was a stenographic record of the hearing.

On the last day of testimony, the parties agreed written closing statements would be submitted in lieu of oral statements. Accordingly, written closing statements were submitted on August 2, 2021. No objection was made to the conduct of the hearing.

After receipt of the parties' submissions and argument, as well as transcripts of the proceedings, the record was closed on August 2, 2021. I have fully considered the evidence and arguments made by both parties in rendering this Opinion and Award.

**THE AMENDED CHARGES AND SPECIFICATIONS**

Respondent has been charged as follows:

## Charge 1

Specification 1. On September 3, 2020, Assistant Superintendent of Administrative Services Timothy Wade, Psy.D. ("Assistant Superintendent Wade") distributed a "Welcome Back Letter" to all District employees which included a directive that provided in relevant part, "[o]n September 9, 2020, all employees will be expected to report in person to their assigned buildings".

Specification 2. On September 9, 2020, Ms. Melton failed to report for duty at Morse Elementary School as directed by Assistant Superintendent Wade.

Specification 3. Ms. Melton's failure to report for duty at Morse Elementary School as directed constitutes insubordination/misconduct/incompetence/conduct unbefitting a Teaching Assistant.

## Charge 2

Specification 1. The District realleges and incorporates the facts set forth in Charge 1, Specification 1.

Specification 2. On September 10, 2020, Mrs. Melton again, failed to report for duty at Morse Elementary School as directed.

Specification 3. Mrs. Melton's failure to report for duty at Morse Elementary School as directed constitutes insubordination/misconduct/incompetence/conduct unbefitting a Teaching Assistant.

## Charge 3

Specification 1. The District realleges and incorporates the facts set forth in Charge 1, Specification 1.

Specification 2. On September 11, 2021, Mrs. Melton again, failed to report for duty at Morse Elementary School as directed.

Specification 3. Mrs. Melton's failure to report for duty at Morse Elementary School as directed constitutes

insubordination/misconduct/incompetence/conduct unbefitting a Teaching Assistant.

## Charge 4

[WITHDRAWN BY DISTRICT]

## Charge 5

Specification 1. In the September 3, 2020 "Welcome Back Letter" Assistant Superintendent Wade also directed all employees to complete a "Health Check survey" daily no earlier than two hours before entering the building and reporting for duty.

Specification 2. As of October 22, 2020, the District has no record of Mrs. Melton submitting a Health Check form on any date for any District building.

Specification 3. Ms. Melton's failure to submit the required daily Health Check form constitutes insubordination/misconduct/ incompetence/conduct unbefitting a Teaching Assistant.

## Charge 6

Specification 1. On September 14, 2020, Principal Elting-Dargan emailed Ms. Melton to reiterate the expectation and directive that Ms. Melton is required to report to her assigned building, Morse Elementary School, every day.  Principal Elting-Dargan requested that if Ms. Melton had a reason for why she had not reported to please share that information with her and the District.

Specification 2. Ms. Melton failed to provide any reason for why she did not report to her post as directed.

Specification 3. Despite being deliberately and clearly directed, on more than one occasion, to report to her post at Morse Elementary School in person, to date, Ms. Melton has repeatedly and consistently failed to report to her post.

Specification 4. Ms. Melton's continued failure to follow the directives to report to her post at Morse Elementary School constitutes insubordination/misconduct/incompetence/conduct unbefitting a Teaching Assistant.

<u>Charge 7</u>

      Specification 1. On September 28, 2020, Assistant Superintendent Wade clearly directed Ms. Melton, again, to report to Morse Elementary School via written correspondence. Assistant Superintendent Wade reiterated that "[a]ll Teaching Assistants were instructed to report to their assigned building effective September 9, 2020, as outlined in the September 3, 2020 'Welcome Back Letter'" that Assistant Superintendent Wade set to all staff. Assistant Superintendent Wade included another copy of the "Welcome Back Letter" with his correspondence to Ms. Melton. The correspondence was sent to Ms. Melton both electronically to her District email and to her mailing address.

      Specification 2. Ms. Melton, again, continued to fail to report to Morse Elementary School as directed.

      Specification 3. Ms. Melton's continued failure to abide by directives from her Principal or the Assistant Superintendent constitutes insubordination/misconduct/incompetence/conduct unbefitting a Teaching Assistant.

<u>Charge 8</u>

      Specification 1. On October 21, 2020, Assistant Superintendent Wade sent Ms. Melton correspondence that stated, "[t]o date, you have not complied with my memorandum of September 28, 2020, which directed you to return to work at Morse Elementary School. You are expected to report to work without further delay. If you do not return to work on or before October 23, 2020, the District shall construe your failure to report as abandonment of your position as a Teaching Assistant in the [District]."

      Specification 2. On the same day, Ms. Melton responded via email to Assistant Superintendent Wade expressing concerns that his directive would somehow require her to disregard the instructions on the Health Check form, specifically the instruction that is she answered "yes" to any of the questions on the form, not to come in and that she would be contacted by the District. Notably, the District does not have any record that Ms. Melton ever submitted a Health Check in form despite being required to do so on a daily basis.

      Specification 3. On the same day, Assistant Superintendent Wade responded to Ms. Melton's email and addressed her concern by

stating that if Ms. Melton required an accommodation pursuant to the Americans with Disabilities Act because of the COVID-19 or if she had been exposed to COVID-19 and received an order of quarantine from the County Health Department, to provide the District with that information. Assistant Superintendent Wade also stated in his email that "[a]t no time [had Ms. Melton] communicated that [she had] been unable to attend work because of a qualifying condition." Assistant Superintendent Wade directed Ms. Melton to communicate with her supervisor, Principal Elting-Dargan and reiterated the District's directive and expectation that she report to work as directed.

Specification 4. To date, Ms. Melton has failed to communicate any qualifying reason or other valid excuse for her continued failure to report to work at Morse Elementary School as repeatedly directed.

Specification 5. Ms. Morse's failure to abide by directives issued by Assistant Superintendent Wade constitutes insubordination/ misconduct/incompetence/conduct unbefitting a Teaching Assistant.

## Charge 9

Specification 1. On October 15, 2020, Morse Elementary School Building Principal Elting-Dargan sent Ms. Melton an email with a directive to report to Morse Elementary School to remove locks from cabinets in room 214 and to relocate the stored items into a new (different) room. Principal Elting-Dargan requested that Ms. Melton notify her of when she would be able to come in to remove the cabinet items and that the directive must be completed no later than October 22, 2020. Completion of the task and compliance with the directive was imperative because the school was preparing to re-open for live, in classroom instruction, anticipated to begin in November 2020.

Specification 2. On October 21, 2020, Principal Elting-Dargan emailed Ms. Melton a second time about the directive to come to the school and remove locks on cabinets in Room 214. Principal Elting-Dargan referenced her prior email dated October 15, 2020 from Specification 1 above and reiterated her directive, specifically that Ms. Melton was required to come in to remove the locks from the cabinets in room 214. Principal Elting-Dargan also stated that it was important for Ms. Melton to comply with her directive because classroom teachers were going to come in the following day (October 22, 2020) to set up their classroom and needed access to the entire classroom.

**Specification 3. Ms. Melton never reported to Morse Elementary School as directed by Principal Elting-Dargan.**

**Specification 4. Mrs. Melton's failure to report to Morse Elementary School as directed constitutes insubordination/misconduct/ incompetence/conduct unbefitting a Teaching Assistant.**

## Charge 10

**[WITHDRAWN BY DISTRICT]**

(D. Ex. 1).[1]

### THE PARTIES' POSITIONS

The District contends it has established just cause to terminate Respondent's employment based upon Respondent's misconduct. The District asserts the documentary evidence establishes the District directed Respondent to report to the Morse Elementary School on September 3, 2020, September 10, 2020, September 14, 2020, September 28, 2020 and October 21, 2020. (D. Exs. 1, 13, 2, 14, 3, 5). The District maintains Respondent failed to report as directed.

The District argues Respondent's contention the directives were unclear or that Respondent did not understand the directives should be rejected in light of the testimony by Janiqua Faircloth,

---

[1] The Department's exhibits are referred to herein as "D. Ex." followed by the appropriate exhibit number. Respondent's exhibits are referred to herein as "R. Ex." followed by the appropriate exhibit number. Transcript references are noted by "T." followed by the appropriate transcript page number.

President of Respondent's Union, and Sarah Hermann, Morse School Building representative, that the directives clearly required Teaching Assistants to report in person at the commencement of the 2020-2021 school year. (T. 498-503, 575-76).

The District also asserts it met its burden to establish Respondent failed to complete the District-mandated daily COVID-19 health screening. The District maintains the directives on how to access the Health Check form were clear and unmistakable. In addition, it notes training was provided to all staff on accessing the form and what to do in the event any staff member answered one of the screening questions with a positive response. (D. Exs. 1, 24; T. 454-56).

The District disputes Respondent's contention she filled out the Morse Staff Health Check form in error, noting Respondent began utilizing the District-approved Health Check form after the commencement of the 3020-a proceedings. (D. Ex. 22; T. 466-68).

The District also argues it has established Respondent failed to comply with the District directive to remove locks on cabinets in her classroom so that items could be relocated in preparation for students returning to the building for in-person instruction on or about October 21, 2020. (D. Exs. 16, 17, 18; T. 231).

The District insists the only appropriate penalty is termination of Respondent's employment. The District maintains it

patiently clarified its position and provided Respondent multiple opportunities to comply with the directives issued.

The District disputes Respondent's contention she was sick and unable to report in person to Morse School. It notes Respondent failed to provide that information to the District at the time despite numerous chances to do so. In fact, it points to Respondent's own correspondence which reflected a general disagreement with the District regarding the need for Teaching Assistants to be in the building, the safety of the building and her own ability to perform her duties remotely. (D. Exs. 1-5, 13, 14).

The District argues Respondent failed to accept responsibility for her actions and failed to indicate she would comply with future directives issued by administrators. Accordingly, the District contends the only appropriate penalty is termination of Respondent's employment.

Respondent, on the other hand, argues she has done what she was supposed to do and, in fact, performed beyond the expectations required of her. Respondent notes she worked for the District for twenty one (21) years and has no prior disciplinary history. Respondent insists she complied with the directive to complete a Health Check form and argues most of what transpired between the parties was a misunderstanding or miscommunication.

With respect to the allegations against her, Respondent argues there was only one (1) directive in Wade's September 3, 2020

"Welcome Back Letter" and that directive was to complete the Health Check survey, which Respondent alleges she did. Respondent notes she informed District administrators on several occasions she was filling out the Morse Staff Health Check form and at no time did the District advise her she was completing the wrong form. (*See also* R. Ex. 4). Respondent contends when it became known to her that there was another Health Check form, in December 2020, she diligently completed that form as well. (T. 482)

In addition, Respondent asserts Elting-Dargan and Assistant Principal Penn are responsible for keeping the Morse Staff Health Form active the entire 2020-2021 school year. She asserts the google form must have sent some type of notification or alert to Elting-Dargan or Penn every day Respondent completed the form and they failed to advise her she was completing the wrong form.

Respondent maintains both Health Check forms direct the staff member she cannot enter the District building if she answers "yes" to any question. The Morse Staff Health Check form advises "someone will contact you" whereas the District form does not do this. Respondent argues the Morse School nurse did contact her in February 2021 and she contends she was permitted to work from home until that time. In addition, Respondent argues the fact someone did ultimately contact her in February 2021 about her responses on the Morse Staff form demonstrates someone from the District was monitoring the form.

Respondent insists she did not intentionally refuse to obey any lawful and reasonable directive of her administrators. Rather, Respondent argues she obeyed the order by adhering to the directive to fill out the Health Check form on a daily basis.

Respondent maintains the Morse Staff Health Check form was the "'qualifying reason' or 'valid excuse" that [Respondent] used to not report physically to the Morse Elementary School building." (Respondent's Closing Statement, p. 12). Moreover, Respondent contends she was following the directive of the Morse Staff Health Check form that states, "Please complete information each day prior to arriving to Morse Elementary School. If you answer yes to any questions DO NOT come in, and you will be contacted." (R. Ex. 1).

In addition, Respondent contends Wade failed to answer her question as to whether she was to disregard the instructions on that form. (D. Ex. 17). She also notes the same question was asked of Elting-Dargan and Elting-Dargan failed to answer it.

Lastly, Respondent argues the 3020-a process was not intended to be punitive in nature. She notes she is a twenty one (21) year employee who has created a "positive light" for students and the District at large. Respondent points out she has never had an attendance problem and would never have been intentionally insubordinate. Respondent maintains she came into the building in June 2020 when there was no Health Check survey to complete or

directive for her to remain out of the building if she answered "yes" to any of the survey questions.

Respondent insists she has been dedicated to her work and worked with students even when she was not getting paid to do so. She argues she can and will continue to exercise professionalism in her work and act in good faith if she is returned to her position. For these reasons and those articulated at the hearing, the Respondent contends the Charges should be dismissed in their entirety and Respondent reinstated to her position and issued a make whole remedy.

**DISCUSSION AND FINDINGS**

The District bears the burden to prove by a preponderance of the credible evidence each of the Specifications with which Respondent is charged. Here, after consideration of the entire record, I find the District has met its burden with respect to Charges 1, 2, 3, 6, 7, 8, and 9. I further find the District failed to meet its burden as to Charge 5.

I will address each of the Charges in seriatim.

**Charges 1-3**

**Charge 1**

**Specification 1. On September 3, 2020, Assistant Superintendent of Administrative Services Timothy Wade, Psy.D. ("Assistant Superintendent Wade") distributed a "Welcome Back Letter" to all District employees which included a directive that provided in relevant part, "[o]n September 9, 2020, all employees will be expected to report in person to their assigned buildings".**

Specification 2. On September 9, 2020, Ms. Melton failed to report for duty at Morse Elementary School as directed by Assistant Superintendent Wade.

Specification 3. Ms. Melton's failure to report for duty at Morse Elementary School as directed constitutes insubordination/misconduct/incompetence/conduct unbefitting a Teaching Assistant.

<u>Charge 2</u>

Specification 1. The District realleges and incorporates the facts set forth in Charge 1, Specification 1.

Specification 2. On September 10, 2020, Mrs. Melton again, failed to report for duty at Morse Elementary School as directed.

Specification 3. Mrs. Melton's failure to report for duty at Morse Elementary School as directed constitutes insubordination/misconduct/incompetence/conduct unbefitting a Teaching Assistant.

<u>Charge 3</u>

Specification 1. The District realleges and incorporates the facts set forth in Charge 1, Specification 1.

Specification 2. On September 11, 2021, Mrs. Melton again, failed to report for duty at Morse Elementary School as directed.

Specification 3. Mrs. Melton's failure to report for duty at Morse Elementary School as directed constitutes insubordination/misconduct/incompetence/conduct unbefitting a Teaching Assistant.

On the record before me, the evidence was undisputed Respondent failed to report to the Morse Elementary School for each school day in September 2020. (T. 40, 210, 215, 233, 237, 320, 502, 560). Specifically, the parties agree Respondent did not report for duty at the Morse Elementary School on September 9, 10 and 11, 2020.

Moreover, the evidence was unrebutted Respondent received the District directive contained in the Superintendent's "Welcome Back Letter" stating that "[o]n September 9, 2020, all employees will be expected to report in person to their assigned buildings . . . ." (D. Ex. 1; T. 675, 807).

Respondent also acknowledged receipt of a September 14, 2020 email from Elting-Dargin advising Respondent was marked absent for September 9th through 11th after she failed to report to the Morse School building. (D. Ex. 2; T. 684, 804). In addition, Respondent's Union representative, and fellow Teaching Assistant, Sarah Hermann testified she reached out to Respondent to ensure Respondent received the District's directive to return to the building. (T. 560).

I find the District's directive to Teaching Assistants to report to their assigned buildings was clear and without ambiguity. (*See, e.g.*, D. Ex. 1; T. 503). I also find the directive was a reasonable one. I credit Elting-Dargan's testimony the District assigned Teaching Assistants to perform tasks from the building that facilitated the students' online learning in the Fall of 2020. (T. 238). Elting-Dargan testified Teaching Assistants were utilized at District buildings to support the teachers by their presence in the classroom, which sometimes involved assisting students who came to District buildings to pick up or exchange devices and to prepare and

provide packets of worksheets for students. (T. 307, 422; *see also* T. 502).

Respondent's contention other employees such as Health Aides could have assisted in handing out Chromebooks to students does not make the direction for Teaching Assistants to report to the building an unreasonable one. The District has the prerogative to assign work and no assignment to Respondent was alleged to have been outside her certification or otherwise in violation of the collective bargaining agreement with Respondent's Union.

Faircloth testified she received a directive from the District at the beginning of the 2020-2021 school year for Teaching Assistants to report to their assigned buildings. (T. 498). Faircloth explained she visited every District building to check on health and safety protocols, and she met with Teaching Assistants to assure them the District would be following health protocols. (T. 499-500). Faircloth testified she was satisfied health protocols were being followed. (T. 500).

Respondent testified she did not report as directed because she had completed the Morse Staff Health Check form. (T. 672, 698, 803; R. Ex. 1). The Morse Staff Health Check form was a form that was used for a few days over the summer to permit teachers to access their classrooms to prepare for school. (T. 239, 241, 245). The record evidence was unrebutted the Morse Staff Health Check form was not an approved District form. (T. 246).

In any event, completing a health check form is not a basis to not come to work as directed. (T. 47). I credit Wade's testimony if Respondent had tested positive for COVID-19 or had been exposed to someone who tested positive, she would have needed to provide an order of quarantine from the County Department of Health. (T. 47). On the record before me, it is unrebutted the District did not receive any evidence Respondent had tested positive for COVID-19 or received an order to quarantine. (T. 47-48). Furthermore, Respondent never stated she had been quarantined or needed to stay home for COVID-related reasons. (T. 48, 234, 237).

Respondent conceded she was never diagnosed with COVID-19. (T. 820). At the hearing, Respondent claimed she did not report at Morse Elementary School as directed because she was sick and experienced symptoms of coughing, fever and aches from September 2020 through the time of the hearing on July 9, 2021. (T. 803). Respondent acknowledged, however, she only put in for two (2) sick days from September 2020 through February 2021. (T. 804).

In addition, in none of the emails in September or October 2020, from Respondent to Wade or Elting-Dargan did Respondent claim she was sick or medically unable to report to the District building. (*See* D. Ex. 2, R. Ex. 4).

Moreover, Respondent failed to request an accommodation under the ADA and she failed to provide any medical reason for continuing to work from home. (T. 49, 321; *see* T. 503). I credit Elting-

Dargin's testimony she emailed Respondent twice concerning her failure to report and Respondent did not respond as to why she had not reported to the building as directed. (T. 321, 326-27, 328, 330). Faircloth also testified Respondent failed to communicate any concerns about returning to the building and failed to explain why she was not returning to the building. (T. 503).

At the hearing, Respondent testified she thought the directive to report in person to an assigned building meant only for a single day, September 9, 2020. (T. 668). Respondent argued the use of the preposition "on" indicated she only was required to report on that single date. (T. 670). I reject Respondent's claim the directive was unclear and note Respondent did not report to the Morse Elementary School on September 9, 2020. In fact, Wade's September 3rd correspondence clearly ordered Teaching Assistants, including Respondent, to report in person to their assigned buildings. (D. Ex. 1). Moreover, Respondent concedes she was advised that, as a Teaching Assistant, she was required to report to the building daily. (T. 808). Respondent admits she received email directions to report to the building on September 14, 2020, September 28, 2020, and October 21, 2020. (T. 817-18).

Respondent also argued she replied to the September 14th email from Elting-Dargan by asking questions about the role of Teaching Assistants in the building and became concerned when Elting-Dargan forwarded her email to Faircloth and Wade. Respondent testified she

was concerned if she sent anything personal to Elting-Dargan it could be forwarded to "people who should not have [the information]." (T. 692).

Respondent testified she felt something was "amiss" because Elting-Dargan had not even thought to ask whether Respondent was sick and had immediately forwarded her response to Wade and the Union President. (T. 693-94). According to Respondent, it was "highly unusual" to copy administration on an attendance issue. (T. 695).

Respondent conceded however, that should she have had a health issue, "the administrator of your building, that's your first person that you would contact." (T. 697). And at no time did Respondent reach out to any administrator in her building to advise she was ill or had a medical reason preventing her from performing her duties at the Morse building as assigned. (T. 821).

It was only on or about December 21, 2020, after initiation of the 3020a proceeding against Respondent, Respondent provided a doctor's note dated from November, 2020 to Donna Singleton, a confidential secretary at the District. (T. 52, 707, 831). Respondent testified she had been seeing her doctor since September 2020 and only submitted the note in December when she learned she was required to do so. (T. 703). Respondent argued she was not authorized to return to work by her physician. (T. 705). Respondent argued she felt confident submitting the note to Singleton because

of her confidential status. (T. 708). Respondent claimed she had not submitted the note previously to Elting-Dargan or Wade because she felt Wade and the Union were inappropriately copied on the correspondence she had with Elting-Dargan on September 14, 2020. (T. 710).

I reject Respondent's contention she was sick and did not submit a note because she did not realize she was required to do so. Respondent conceded receipt of the September 3, 2020 "Welcome Back Letter" which clearly explained that if a staff member could not report in person because they answered "yes" to any question on the health form, medical documentation was required to be provided. (D. Ex. 1). There is no evidence before me Respondent attempted to submit any medical documentation prior to November 2020 to support her continued refusal to report to work in person at the Morse Elementary school.

It bears important mention Respondent failed to provide that information to the District at the time of her absences despite numerous opportunities to do so. (D. Ex. 5, R. Ex. 4). Indeed, Respondent's own correspondence in September and October 2020 reflects a general disagreement with the District's determination that Teaching Assistants would report to their assigned buildings, rather than notice she was unable to attend in person for medical reasons. (D. Exs. 1-6, 13, 14).

Moreover, the evidence established Respondent was not too sick to work and did, in fact, continue to work with her assigned teacher remotely during the time period covered by the charges. (D. Ex. 23; T. 806).

In addition to being clear and reasonable, I also find the directive to report in person was evenly applied. The District did not permit any other Teaching Assistant to work from home. (T. 51, 213, 237). Moreover, Faircloth confirmed all other Teaching Assistants complied with the District's directive to report to the building. (T. 502; *see also* T. 559).

That Respondent disagreed with the District's determination Teaching Assistants had to report to the building each day, while students and teachers reported virtually, was not a basis for Respondent to stay at home. Administrators, secretaries, custodians, security staff and Teaching Assistants were directed to report to their assigned buildings in September 2020 (T. 309, 524). It was incumbent upon Respondent to comply with that directive. Indeed, Respondent's assertion she was on an "advanced/expert level on Google classroom" (D. Ex. 2) was also not a basis for Respondent to ignore her supervisor's directive to report in person at the Morse Elementary School building.

By refusing to report to her assigned building, administrators at the District were prevented from supervising Respondent in her day-to-day activities. (T. 309-10). Elting-Dargan explained she

supervised other Teaching Assistants at the building by conducting
walk-throughs of the building to observe Teaching Assistants
interacting with students online. (*Id.*; T. 422). Respondent's
refusal to report for duty at her assigned building impeded Elting-
Dargin from supervising Respondent's work as she did the other
building Teaching Assistants. (T. 424).

Based upon all the record evidence, I find Respondent's failure
to report for duty at the Morse Elementary School as directed on
September 9, 10 and 11, 2020, constitutes insubordination,
misconduct and conduct unbefitting a Teaching Assistant.
Accordingly, based a review of the record evidence, I find
Respondent is guilty of Charge 1, Specifications 1-3, Charge 2,
Specifications 1-3, and Charge 3, Specifications 1-3. Accordingly,
Charges 1, 2 and 3, and the Specifications contained therein, are
sustained.

### Charge 5

**Specification 1. In the September 3, 2020 "Welcome Back Letter"
Assistant Superintendent Wade also directed all employees to
complete a "Health Check survey" daily no earlier than two
hours before entering the building and reporting for duty.**

**Specification 2. As of October 22, 2020, the District has no
record of Mrs. Melton submitting a Health Check form on any
date for any District building.**

**Specification 3. Ms. Melton's failure to submit the required
daily Health Check form constitutes insubordination/misconduct/
incompetence/conduct unbefitting a Teaching Assistant.**

The unrebutted record evidence established Respondent failed to complete and submit the District authorized Health Check survey from September 2020 through November 2020. I credit Wade's testimony he asked Giangreco to review District records to determine whether Respondent had completed the form, and Giangreco reported Respondent had not completed it. (T. 46, *see also* T. 462; D. Ex. 19).

I also credit Giangreco's testimony she conducted a review of the District Health Check submissions and determined Respondent had not completed the form at any time from September through November 18, 2020. (T. 462, 464; D. Ex 20). The record evidenced on December 4, 2020, Respondent started completing the District Health Check form, and she completed that form on most school days through January 19, 2021. (T. 465; D. Ex. 21).

Respondent reported on the Morse Staff Health Check form that she was experiencing symptoms of COVID-19 for every school day from December 4, 2020 though February 4, 2021. (T. 467; D. Ex. 22).

Wade testified the Morse Staff Health Check form completed by Respondent was not used District-wide and was not authorized for use by Respondent once the school year commenced in 2020. (T. 80, 93; *see also* T. 460).

Elting-Dargin confirmed the Morse Staff form was used only for two (2) days prior to the start of school. According to Elting-Dargin, the District-wide memorandum from Wade on September 3, 2020 trumped anything the Morse school had been using prior to that time.

(T. 322). Elting-Dargin noted the Morse Staff form was only referenced in a single memo she sent staff about cleaning their rooms prior to the start of school. (T. 322).

Elting-Dargin testified other staff members at Morse correctly used the District-wide link for the Health Check as directed by Wade in his September 3, 2020 letter. (T. 323, 418). Indeed, Elting-Dargin asserted each District employee received a calendar invite daily with a link to the District Health Check form, and no similar invites were sent for the Morse Staff form. (T. 419).

Giangreco testified there has always only been one (1) official Health Check form, although adjustments have been made to the form based on changing New York State requirements. (T. 452).

On the first Superintendent's Conference Day, September 8, 2020, Wade and Giangreco provided training to all staff regarding COVID procedures, including use of the Health Check form. (T. 454-55, 576; D. Ex. 24). The training advised staff members how and where to access the District's Health Check form, on the District website or at the District's buildings. (T. 576).

The professional development training included direction to staff that if they answer "yes" to a question on the form, they cannot enter the building but there must be medical follow up and documentation of any inability to report for work. (T. 458). The document indicates a "yes" response requires the signer "must go to a medical provider for assessment". (T. 491, 493). The training

32

advised staff they were required to use leave time to be assessed if they experienced COVID symptoms. (T. 492). Respondent was in attendance at the professional training on September 8, 2020. (T. 668; D. Ex. 25).

Respondent testified she completed the Morse Staff Health form every school day. (T. 672, 698; R. Ex. 1). She testified she had never seen the District Health Check form and was unaware she was completing the wrong form. (T. 672, 698). Respondent insisted she did not knowingly fill out the wrong form. (T. 672-73). Respondent did not believe she was being insubordinate by filling out the Morse Staff form. (T. 673). Respondent notes, in December 2020, when she learned there was a District Health Check form, separate and distinct from the one she had been completing, she started filling out that form as well. (T. 674, 700).

Respondent maintains she does not recall receiving training on how to fill out the District Health Check form at the Superintendent's Conference Day. (T. 824-25).

Respondent argues she informed the District on September 14, 2020, that she was completing the Morse Staff Health Check form each day and neither Wade nor Elting-Dargan advised her she was filling out the wrong form. (T. 711, 718). Respondent also argues the Morse Staff form states if you answer "yes" to a question on the form, someone from the District would "contact you" and no one contacted her until February 2021. (T. 713, 717).

Respondent insists she would not refuse to follow a directive from an administrator but she felt she was complying with the directive in the Morse Staff form that she not enter any District building if she answered "yes" to any question on the form. (T. 717).

I find the District directed Respondent to complete a Health Check form on a daily basis and Respondent failed to comply with that directive when she only submitted responses to the Morse Staff Health Check form. (T. 475). However, I conclude Respondent's failure to submit the correct form was an error or mistake on her part and not an act of insubordination, misconduct, incompetence or conduct unbefitting a Teaching Assistant.

I credit Respondent's testimony this was a mistake on her part and she was unaware she was completing the wrong form. (T. 672, 698). Respondent insisted she did not knowingly fill out the wrong form and I credit that testimony. (T. 672-73).

On the record before me, I decline to place the blame on Elting-Dargan or any other administrator for their failure to notice Respondent was routinely submitting responses on the wrong form. Just as I determined submitting the wrong form was a genuine mistake on the part of the Respondent, I also conclude the School bears no responsibility for failing to notify Respondent sooner that the wrong form was being utilized.