Accordingly, for the reasons set forth herein, I find the weight of the record evidence fails to substantiate this Charge. Charge 5 is dismissed.

## Charges 6-7

### Charge 6

**Specification 1. On September 14, 2020, Principal Elting-Dargan emailed Ms. Melton to reiterate the expectation and directive that Ms. Melton is required to report to her assigned building, Morse Elementary School, every day. Principal Elting-Dargan requested that if Ms. Melton had a reason for why she had not reported to please share that information with her and the District.**

**Specification 2. Ms. Melton failed to provide any reason for why she did not report to her post as directed.**

**Specification 3. Despite being deliberately and clearly directed, on more than one occasion, to report to her post at Morse Elementary School in person, to date, Ms. Melton has repeatedly and consistently failed to report to her post.**

**Specification 4. Ms. Melton's continued failure to follow the directives to report to her post at Morse Elementary School constitutes insubordination/misconduct/incompetence/conduct unbefitting a Teaching Assistant.**

### Charge 7

**Specification 1. On September 28, 2020, Assistant Superintendent Wade clearly directed Ms. Melton, again, to report to Morse Elementary School via written correspondence. Assistant Superintendent Wade reiterated that "[a]ll Teaching Assistants were instructed to report to their assigned building effective September 9, 2020, as outlined in the September 3, 2020 'Welcome Back Letter'" that Assistant Superintendent Wade set to all staff. Assistant Superintendent Wade included another copy of the "Welcome Back Letter" with his correspondence to Ms. Melton. The correspondence was sent to Ms. Melton both electronically to her District email and to her mailing address.**

**Specification 2. Ms. Melton, again, continued to fail to report to Morse Elementary School as directed.**

**Specification 3. Ms. Melton's continued failure to abide by directives from her Principal or the Assistant Superintendent constitutes insubordination/misconduct/incompetence/conduct unbefitting a Teaching Assistant.**

The record evidence was unrebutted Elting-Dargan issued a directive to Respondent on September 14, 2020, to report to her assigned District building and that directive was repeated by Wade on September 28, 2020. (T. 216; D. Ex. 14). The evidence also established Respondent failed to report as directed. (T. 40, 210, 215, 233, 237, 320, 502, 560).

I find the directives issued by Elting-Dargan and Wade were clear and unmistakable. (*See* D. Ex. 2, 3, 4, 14, 15). Respondent was not authorized to work from home and she continued to do so. (T. 221). Elting-Dargan testified she did not give Respondent permission to perform her assigned duties remotely. (T. 225). Elting-Dargan maintained she advised building teachers should not extend an invitation for Respondent to join their Google classrooms. (T. 225). The record is unrebutted Respondent did not comply with the repeated directives to report in person. (T. 40, 43, 210, 216).

In making these findings, I note I have considered Respondent's contention Elting-Dargan was biased against her (*See, e.g.,* T. 350, 352; Respondent's Closing Statement, pp. 3-5)), but I find no evidence of this. I credit Elting-Dargan when she testified she has no issue with Respondent's work. (T. 402). Elting-Dargan

36

complimented Respondent for many of her achievements and work with students (*See, e.g.*, T. 288-303, 402) and testified, when it comes to work with the District's students, Respondent is dedicated and hard-working. (T. 353). Indeed, Elting-Dargan testified Respondent's work with students over the years has been very positive. She noted Respondent has an excellent work ethic and her work with students was appreciated. (T. 253; *see also* T. 367). Elting-Dargin agreed Respondent has been a "positive light" for Morse School and the students there. (T. 368).

That Elting-Dargin testified Respondent did not always want to comply with what was asked of her does not make Elting-Dargin an unreliable witness. (*See, e.g.,* T. 353). I have considered other claims of bias involving Elting-Dargin, including the allegation Elting-Dargin repeatedly attempted to move Respondent's computer lab, and find no credible basis to support the allegation.

Respondent testified she felt Wade's email on September 14th was suspicious because he addressed the issue of her being required to report to the District building which she characterized as "odd" because according to Respondent, it should be the Principal's responsibility to assign staff in each of the District buildings. (T. 711).

I find the fact the District directive to report in person came from a level of management senior to Respondent's building Principal was not a ground for Respondent to ignore it. Respondent's

37

testimony on this issue highlights the fact Respondent knew she was required to report in person but simply sought reasons to avoid the directive because she did not want to report in person and/or she felt she was capable of performing her duties remotely. Neither of those reasons is a ground to avoid a reasonable directive from her supervisors.

For these reasons and those set forth in the section addressing Charges 1-3, I find the weight of the credible evidence was Respondent's failure to follow the District directives to report to her position at the Morse Elementary School constitutes insubordination, misconduct and conduct unbefitting a Teaching Assistant. Accordingly, the Department has met its burden to substantiate these Charges. Charge 6, Specifications 1-4 and Charge 7, Specifications 1-3 are sustained.

## Charge 8

**Specification 1. On October 21, 2020, Assistant Superintendent Wade sent Ms. Melton correspondence that stated, "[t]o date, you have not complied with my memorandum of September 28, 2020, which directed you to return to work at Morse Elementary School. You are expected to report to work without further delay. If you do not return to work on or before October 23, 2020, the District shall construe your failure to report as abandonment of your position as a Teaching Assistant in the [District]."**

**Specification 2. On the same day, Ms. Melton responded via email to Assistant Superintendent Wade expressing concerns that his directive would somehow require her to disregard the instructions on the Health Check form, specifically the instruction that is she answered "yes" to any of the questions on the form, not to come in and that she would be contacted by the District. Notably, the District does not have any record**

38

that Ms. Melton ever submitted a Health Check in form despite being required to do so on a daily basis.

**Specification 3.** On the same day, Assistant Superintendent Wade responded to Ms. Melton's email and addressed her concern by stating that if Ms. Melton required an accommodation pursuant to the Americans with Disabilities Act because of the COVID-19 or if she had been exposed to COVID-19 and received an order of quarantine from the County Health Department, to provide the District with that information. Assistant Superintendent Wade also stated in his email that "[a]t no time [had Ms. Melton] communicated that [she had] been unable to attend work because of a qualifying condition." Assistant Superintendent Wade directed Ms. Melton to communicate with her supervisor, Principal Elting-Dargan and reiterated the District's directive and expectation that she report to work as directed.

**Specification 4. To date, Ms. Melton has failed to communicate any qualifying reason or other valid excuse for her continued failure to report to work at Morse Elementary School as repeatedly directed.**

**Specification 5. Ms. Morse's failure to abide by directives issued by Assistant Superintendent Wade constitutes insubordination/ misconduct/incompetence/conduct unbefitting a Teaching Assistant.**

For the reasons set forth in the sections addressing Charges 1-3 and 6-7, I find the record evidence established the District issued a directive on October 21, 2020, for Respondent to report in person to the Morse Elementary School and that directive was clear, unequivocal, reasonable and evenly applied. (*See, e.g.*, D. Ex. 5, 23)

Respondent failed to provide a rationale for her failure to report at this time and no medical documentation was provided to support Respondent's failure to report. (T. 44).

39

In response to Wade's October 21, 2020 directive, Respondent denied she had abandoned her position. (T. 753). She noted the health check form and asked if she was to disregard instructions on the form about not reporting if she answered "yes' to any question. (T. 753). Respondent contends she did not receive an answer to her question. (T. 754). Respondent argues she would have come to the building if Wade had told her to disregard the health check form. (T. 762).

In reviewing the record evidence on this Specification, I find Wade appropriately answered Respondent's email and advised Respondent she would need documentation if she was seeking to work from home based upon any needed accommodation under the Americans with Disabilities Act. Moreover, Respondent was previously advised she would need to submit medical documentation if she was unable to access one of the District's buildings because she was experiencing COVID symptoms. (*See* D. Ex. 1).

I have also considered Respondent's argument concerning the fact Respondent substituted for a District teacher for two (2) weeks in November 2020. Wade testified he was unaware Respondent had substituted for Craigg for two (2) weeks and I credit this testimony. (T. 94, 98). Wade testified he recalled the Assistant Principal Penn sent a time sheet for Respondent to substitute teach and he denied the request. (T. 95). Elting-Dargin testified Craigg asked Respondent to substitute for her for two (2) weeks in late

October 2020, but Respondent was not on an approved substitute list and the request for Respondent to substitute for Craigg was not approved. (T. 314, 317, 417).

Respondent testified she was never informed by Elting-Dargan that she was not supposed to substitute for Craigg. (T. 737). Moreover, Respondent noted Elting-Dargan never sent a substitute teacher to cover for Craigg's absence for two (2) weeks and she was the only employee in Craigg's virtual class for two (2) weeks. (T. 737-40, 799; R. Exs. 15, 16). Respondent argued if she had not covered the class, the children would have been marked absent and lost instruction for two (2) weeks. (T. 738). Respondent insists Elting-Dargan knew and authorized her to cover Craigg's class during this period of time.

While I commend Respondent for filling in when needed while a colleague was on emergency leave, her time doing so does not excuse Respondent's failure to report for duty at her assigned building, nor does it indicate the District acquiesced to Respondent's working from home. The District repeatedly and consistently informed Respondent she must report to her assigned building and Respondent failed to do so. It is noteworthy the District initiated procedures pursuant to Section 913 of the Education Law to ascertain and review the reasons Respondent claimed she was not able to come to the District to work. (T. 55).

41

For these reasons and those set forth in the sections addressing Charges 1-3 and 6-7, I find the weight of the credible evidence was Respondent's failure to follow the District directives to report to her position at the Morse Elementary School constitutes insubordination, misconduct and conduct unbefitting a Teaching Assistant. Accordingly, the Department has met its burden to substantiate this Charge. Charge 8, Specifications 1-5, are sustained.

## Charge 9

> **Specification 1. On October 15, 2020, Morse Elementary School Building Principal Elting-Dargan sent Ms. Melton an email with a directive to report to Morse Elementary School to remove locks from cabinets in room 214 and to relocate the stored items into a new (different) room. Principal Elting-Dargan requested that Ms. Melton notify her of when she would be able to come in to remove the cabinet items and that the directive must be completed no later than October 22, 2020. Completion of the task and compliance with the directive was imperative because the school was preparing to re-open for live, in classroom instruction, anticipated to begin in November 2020.**
>
> **Specification 2. On October 21, 2020, Principal Elting-Dargan emailed Ms. Melton a second time about the directive to come to the school and remove locks on cabinets in Room 214. Principal Elting-Dargan referenced her prior email dated October 15, 2020 from Specification 1 above and reiterated her directive, specifically that Ms. Melton was required to come in to remove the locks from the cabinets in room 214. Principal Elting-Dargan also stated that it was important for Ms. Melton to comply with her directive because classroom teachers were going to come in the following day (October 22, 2020) to set up their classroom and needed access to the entire classroom.**
>
> **Specification 3. Ms. Melton never reported to Morse Elementary School as directed by Principal Elting-Dargan.**
>
> **Specification 4. Mrs. Melton's failure to report to Morse Elementary School as directed constitutes**

**insubordination/misconduct/ incompetence/conduct unbefitting a Teaching Assistant.**

Based upon the record evidence, I find the directive to Respondent to come to the building to remove locks and items from a locked cabinet was clear and unambiguous, and there was no evidence it was an unreasonable one. Elting-Dargan testified she needed Respondent to come to the building to move items from locked cabinets in the computer lab. She explained the school had added a classroom section and moved the computer lab to a different space. (T. 226).

I credit Elting-Dargin's testimony the computer lab was moved in the Fall of 2020 to accommodate the addition of a new class and was in no way a disciplinary action against Respondent. (T. 420-21).

The record established Respondent failed to come to the building to move the requested items. (T. 227). By November 7, 2020, Respondent failed to return to the District to remove any of the requested items from Room 214. Furthermore, I credit record evidence teachers assigned to the new classroom were disrupted in their ability to prepare for students' return to the building the following week. (D. Ex. 18).

Respondent failed to provide a valid excuse for failing to comply with the District's directive. Based on the foregoing, I find the District has met its burden to establish Respondent is guilty of Charge 9. Respondent's failure to comply with the

directive was insubordination, misconduct and conduct unbefitting a Teaching Assistant. Accordingly, Charge 9, Specifications 1-4, are sustained.

## PENALTY

The Department met its burden and proved, by a preponderance of the credible evidence, Charges 1, 2, 3, 6, 7, 8, and 9 and all of the Specifications stated therein. However, the Department failed to meet its burden as to Charge 5. Having determined Respondent is guilty of seven (7) of the eight (8) Charges preferred against her, the remaining question is that of the appropriateness of the proposed penalty of termination.

Some preliminary comments are appropriate. It is axiomatic the degree of any penalty should be in keeping with the seriousness of the offense. However, in determining the appropriate penalty, I must also consider whether the Respondent is willing and capable of improvement so that, with remediation, she may provide a valid educational experience for her students. See N.Y. Education Law 3020-a(4)(a).

Arbitrators often find openly defiant and egregiously insubordinate conduct is of the type of extremely serious offenses which justifies summary discharge without the necessity of prior warnings or attempts at corrective discipline. In many cases, termination is upheld under these circumstances even where the employee has long seniority and a good work record. However, in

some circumstances, mitigating factors may be considered which can be applied to give an employee a second chance.

In reviewing the record evidence here, I note Respondent is a long-term, twenty one (21) year employee with no prior discipline. In addition, I credit record evidence Respondent cares deeply for her students and works hard to help them achieve success. (*See* R. Ex. 6). I note the record evidenced Respondent's past achievements at the school, including that she established the first STEAM media center, that she was selected to pilot a SONY STEM program, that she helped a student audition for an HBO special series outside of class time, that she helps students prepare extra-curricular dance videos, that she is responsible for a special after-school program entitled "Mighty Young Techs", and that she has worked on programs like the African American Multi-Cultural Read-in. (*See, e.g.,* R. Ex. 6).

I credit Respondent's testimony she has been working with students to help them meet the challenges of learning in a virtual environment, even after she was served with instant Charges. (T. 666). Respondent assisted many students and families with transitioning to online learning, including connecting Chromebooks and troubleshooting internet and device problems. (T. 658-59). I accept Respondent's testimony she worked hard to assist students and families with the virtual learning experience. (T. 659).

I also take note of the testimony of Cheryl Rabinowitz, the District's former Assistant Superintendent for Technology and

Innovation, who explained Respondent works well with students in the computer lab, assists students with technology projects and fairs, and dedicates her time outside of class. (T. 616-17, 618-19). Rabinowitz also testified Respondent participated in a District-wide technology committee and contributed greatly to the committee's work. (T. 617).

I credit the testimony of Shawn Cheatham, a former microcomputer technician at the District, who described how Respondent went "above and beyond" to improve the District's computer labs and students' experience in those labs. (T. 605, 607).

Based upon my own review of Respondent's testimony over the course of several days, I find Respondent is capable of improvement and has much to offer the District's students. Accordingly, while I find Respondent engaged in certain misconduct and insubordination over the charged year, those violations, while serious, were not termination transgressions.

Nevertheless, Respondent must take responsibility for her documented failure to abide the reasonable, repeated directions of her Principal and Assistant Superintendent Wade, as well as the other noted misconduct addressed in this Opinion and Award. Respondent's failure to abide the directives to report to her assigned building during the 2020-2021 school year and her failure to submit medical documentation for her absences until after the

initiation of Charges against her was a case of material and repeated insubordination.

Although I find the misconduct and insubordination engaged in by Respondent to be of a serious nature, I find Respondent can and will be a productive employee if given another opportunity to do so. In making this determination, I note the circumstances surrounding the global pandemic caused by COVID-19 were unprecedented and caused severe stress and strain for many which may have contributed to the decisions made by Respondent during the 2020-2021 school year. I credit Respondent's testimony she would not disobey orders from her supervisors in the future. (T. 784). I also credit Respondent's testimony she has no grudges against the District and if reinstated, would continue to work tirelessly for the District's students. (T. 787).

Accordingly, upon the full record in this matter, the foregoing discussion and findings, and the determination Respondent is guilty of seven (7) Charges herein, I conclude although Respondent engaged in certain acts of misconduct and insubordination, there is insufficient evidence Respondent should be terminated.

I find the appropriate penalty in this matter is a suspension without pay for a period of four (4) and a half months starting from the date Respondent was removed from the payroll on February 10, 2021, through the end of the school year in June 2021. Respondent

shall be reinstated without back pay effective the start of the 2021-2022 school year.

In addition, Respondent is placed on notice should any repetition of this type of misconduct or insubordination occur, further disciplinary charges may be preferred against her and if found guilty, the range of penalties may include termination. In that event, this determination will be considered notice and imposition of progressive discipline.

Accordingly, I make the following award:

## AWARD

The undersigned, duly designated as the Hearing Officer, and having heard the proofs and allegations of the above-named parties, makes the following AWARD:

1. Charges 1, 2, 3, 6, 7, 8, and 9, and all of the Specifications contained therein, are sustained;

2. Charge 5 is dismissed; and

3. For the violations listed in paragraph "1" above, the appropriate penalty shall be a suspension without pay for a period of four (4) and a half months starting from the date Respondent was removed from the payroll on February 10, 2021, through the end of the school year in June 2021.

4. Respondent shall be reinstated, without back pay, effective the start of the 2021-2022 school year.

Dated: September 1, 2021

_____
Julie A. Torrey, Esq.
Hearing Officer

## AFFIRMATION

State of New York  )
                   ) ss.:
County of Suffolk  )

I, JULIE A. TORREY, do hereby affirm upon my oath as Hearing Officer that I am the individual described herein and who executed this instrument, which is my Opinion and Award.

Dated:   September 1, 2021

_____
Julie A. Torrey, Esq.
Hearing Officer