Copy mailed by chambers 8-8-22. DH

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
CAROL MELTON,                                     :
                Plaintiff,               :
                                  :       **OPINION AND ORDER**
v.                                                :
                                  :       19 CV 9755 (VB)
POUGHKEEPSIE CITY SCHOOL DISTRICT,                :
                Defendant.               :
--------------------------------------------------------------x

Briccetti, J.:

      Plaintiff, proceeding pro se, brings claims against the Poughkeepsie City School District

("PCSD") for discrimination and retaliation in violation of Title VII of the Civil Rights Act of

1964 ("Title VII").

      Now pending is PCSD's motion for summary judgment.  (Doc. #53).

      For the following reasons, the motion is GRANTED.

      The Court has subject matter jurisdiction under 28 U.S.C. § 1331.

## BACKGROUND

I.    Prior Lawsuit (Melton I)

      On December 14, 2016, plaintiff commenced an action in this Court, bringing claims

against PCSD for race discrimination and retaliation in violation of Title VII and state law for

conduct occurring prior to July 23, 2017.  See Melton v. Poughkeepsie City Sch. Dist., No. 16-

cv-9701 (VB) (S.D.N.Y. filed Dec. 14. 2016) ("Melton I").  On September 24, 2019, the Court

1

granted summary judgment for defendant on all of plaintiff's claims and dismissed the case. See

Melton v. Poughkeepsie City Sch. Dist., 2019 WL 4640234 (S.D.N.Y. Sept. 24, 2019).[1]

The same day, plaintiff sought leave to file an amended complaint in Melton I based on a

second EEOC right-to-sue letter she received regarding incidents that occurred after July 23,

2017. The Court denied plaintiff's motion, but informed her she could commence a new lawsuit

regarding the incidents after July 23, 2017. (See Melton I, Doc. #110).[2]

Plaintiff commenced the instant action on October 21, 2019. (See Doc. #1).

II.    Factual Background

The parties have submitted memoranda of law, declarations with exhibits, and statements

of undisputed material facts pursuant to Local Civil Rule 56.1, which together reflect the

following factual background.[3]

Plaintiff, who is African American, is a teaching assistant for PCSD. She has been

employed at Morse Elementary School ("Morse") since September 14, 2015, and was assigned

to other PCSD schools previously.

---

[1]    Plaintiff will be provided copies of all unpublished opinions cited in this decision. See
Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009).

[2]    This Opinion and Order references filings in Melton I by (Melton I, Doc. #__).

[3]    The Court only considers statements of material fact supported by admissible evidence
and will deem admitted any statement of material fact that is not controverted by a statement
supported by a citation to admissible evidence. That plaintiff is proceeding pro se does not
relieve her obligation to comply with these requirements when she was served with a "Notice to
a Pro Se Litigant Who Opposes a Motion for Summary Judgment" providing notice of her
obligation to submit admissible evidence in response to PCSD's Rule 56.1 Statement in both this
action and in Melton I. Cf. Kendrick v. Greenburgh Hous. Auth., 2011 WL 1118664, at *6 n.11
(S.D.N.Y. Mar. 22, 2011).

A.      Teaching Assistant Assignments

PCSD and plaintiff's union, the PCSD Paraprofessionals Association, are parties to a

collective bargaining agreement (the "CBA") which contains an article entitled, "Seniority –

Reduction in Force."  (Doc. #74 (Pl. Dec.) at ECF 222).[4]  The article states:

> Seniority – The Employer and the Union shall jointly establish a seniority list by job title.
> Seniority shall be the most important factor in filling vacant jobs in the School District and
> in transfers within existing jobs.

(Id.).

However, contrary to the CBA, in practice PCSD employees do not consider seniority in

making teaching assistant assignment decisions.  Instead, an assistant is assigned to the same

after-school or extended-school-year program ("ESY Program") positions they held during the

prior year unless the assistant receives a negative evaluation or does not seek reappointment.  In

the event a teaching assistant position is open, other teaching assistants who have served in a

substitute capacity for the applicable program and/or have actively sought the assignment by

contacting Yvonne Palmer, the Director of Instructional Support Services for Elementary

Schools at PCSD during the relevant period, may also be considered.  (Doc. #58 ¶ 2).

Plaintiff did not meet any of these criteria for an ESY Program position during the

relevant period.  (Doc. #58 ¶ 3; Doc. #57 ¶ 5).

1.      Summer 2017

Plaintiff appeared for a group interview for a summer 2017 ESY Program teaching

assistant position.  Plaintiff was not selected.  Teaching assistants who did not appear for the

group interview and one individual who plaintiff claims was not a certified teaching assistant,

Maryann Baker, were selected.

---

[4]      "ECF __" refers to page numbers automatically assigned by the Court's Electronic Case
Filing system.

Email correspondence between plaintiff and PCSD informing plaintiff she was selected to interview does not state that candidates must attend the group interview or be certified.  (Doc. #74 ("Pl. Decl.") at ECF 235).

Moreover, according to Ronel Cook, Deputy Superintendent for Operations at PCSD during the relevant period, Maryann Baker was grandfathered into "teaching assistant" status when the certification requirements for teaching assistants changed.  (Doc. #54-4 ¶ 41). Therefore, Ms. Baker was regularly assigned teaching assistant positions for more than thirty years, notwithstanding that she began employment with PCSD as a teaching aide.

Plaintiff disputes that Ms. Baker was grandfathered into teaching assistant status, citing to a resolution of the PCSD board approving Ms. Baker's retirement from her position as a Teacher Aide.  (Pl. Decl. at ECF 238).

2.    2017–2018 School Year

Plaintiff was assigned to substitute for Morse's after-school program during the 2017–2018 school year.  The teaching assistant assigned to the permanent[5] after-school role at Morse was senior to plaintiff and had held this position during the prior year.

Plaintiff was not eligible to be assigned to an after-school position at a school other than Morse because PCSD does not assign after-school duties at a different school from where a teaching assistant performs her school-day duties, to avoid a teaching assistant having simultaneous conflicting obligations near the end of the school day at two different school buildings.  (Docs. ## 54-4 at ECF 28; 57 ¶¶ 7–8).

---

[5]    "Permanent," as used in this context, means on a full-time, non-substitute basis.  Plaintiff contests the classification of before- and after-school positions as "permanent" because the assigned teaching assistant must re-apply each year.

4

       3.    <u>Summer 2018</u>

Plaintiff alleges PCSD refused to interview her for summer 2018 positions for which she was qualified and hired others with less seniority.  (Doc. #31 ("Am. Compl.") ¶ 7).  Plaintiff does not specify what positions she sought to be interviewed for; she does list the names of four other teaching assistants whom she claims were hired into these positions, two of whom were senior to plaintiff, Ms. Baker, and one of whom was not on the seniority list.  (Pl. 56.1 ¶ 46; Pl. Decl. at ECF 232–33).

    B.    <u>Training Opportunity</u>

Plaintiff attended three days of training in September 2018 for a teaching assistant role at the middle school.  Prior to the fourth, and final, day of the training program, plaintiff informed Dr. Kathleen Farrell, then Interim Superintendent of Schools, she was no longer interested in the position.  (Doc. #54-22).

PCSD denied plaintiff permission to attend the final day of training.  The remaining two participants in the training—two Caucasian women—were permitted to finish.  It is disputed how much of the final day plaintiff actually attended.

    C.    <u>Empire Grant Awards</u>

Plaintiff co-founded The Black and Latino Coalition, Inc. ("Coalition"), a non-profit organization, with her husband in 2011.  Plaintiff, her husband, and her three children volunteer for the Coalition without compensation.  The Coalition is not a party to this action.

The Coalition has applied for grants from PCSD approximately five or six times beginning in 2014, all of which were denied.  The Coalition first applied for an Empire State grant for the Mighty Young Techs, an after-school program the Coalition operates for PCSD, for the 2016–2017 school year.

Nicole Cherry, a PCSD employee involved with the Empire Grant review process beginning in 2019, testified the review process is a "blind" one, meaning the applicant's name and any identifying information is redacted from grant requests which are scored based on a rubric by a committee comprised of three-to-five persons who are administrators, teachers, or other individuals such as community members.  (Doc. #54-17 at 23–24).[6]

D.     Computer Lab Air Conditioner

PCSD students or staff members may submit a request to the facilities department for an air conditioner to be installed in a classroom.  When the request is made by a staff member, it must be accompanied by a doctor's medical recommendation for an air conditioner.  The principal does not approve or determine the outcome of air conditioner requests.

On June 4, 2018, plaintiff informed Nadine Elting-Dargan, the Principal of Morse Elementary during the relevant period, by email that plaintiff's computer lab had no air conditioning during "MAPS testing."  (Pl. Decl. at ECF 190).  During her deposition, Principal Dargan testified she responded to plaintiff's request for an air conditioner by directing plaintiff to reach out to the head custodian and sending plaintiff's request to the facilities department.

E.     Paycheck Deductions

PCSD deducted $427.20 from plaintiff's paycheck, representing two days plaintiff did not work.  Plaintiff missed work to attend a Public Employment Relations Board ("PERB") hearing regarding charges she brought against her union.  Plaintiff reported her absence in PCSD's electronic attendance system using the rationale "School Business."  Plaintiff did not

---

[6]     Although Ms. Cherry did not participate in the review process for grant cycles prior to 2019, she testified that she did not have any reason to believe that the process differed from prior years.  (Doc. #54-17 at 39).

receive prior approval from PCSD to be absent or to record her absence as "School Business." (Doc. #54-7 at 170–71, 176; Doc. #54-20).

District Policy 6830, regarding travel, conference attendance, and expense reimbursement, provides PCSD may reimburse an employee for conference attendance when the superintendent approves a request from an employee to attend conferences or meetings as a representative of PCSD.  PCSD contends absences for "School Business" correspond to paid leave under District Policy 6830, for which plaintiff was not approved.  Plaintiff disputes that District Policy 6830 governs "School Business" absences and argues she has used "School Business" to attend prior PERB conferences without issue, without citing admissible evidence in support.

Plaintiff filed a grievance with her union about PCSD docking her pay for attending the PERB hearing, but her union did not pursue the grievance to arbitration.

F.   Movement of Computer Lab

In October 2020, plaintiff's computer lab was moved to a room on the ground floor.  By this time, PCSD had provided Morse's students with Chromebooks, so the district did not need a separate full-sized computer lab.

The lab was moved so a new section of students with special needs could use the lab's former classroom, which was considered suitable for students who receive speech services, as their primary classroom.  The room to which the lab was moved had previously stored physical education equipment, and was not considered a safe primary classroom for special needs students because its emergency escape required students to remove a metal grate and climb a ladder.[7]

---

[7]   Plaintiff contends this rationale was fabricated, but she does not point to admissible evidence in the record for support.  She does not dispute the remaining reasons for the movement of the lab.

G.    Fall 2020 Absences

On September 3, 2020, Dr. Timothy Wade, Assistant Superintendent of Administrative

Services, sent a letter to all PCSD staff outlining the procedures for returning to work for the

2020–2021 school year amid the COVID-19 pandemic.  The September 3 letter directed

employees to report for work in person beginning September 9 and to complete a health survey

no more than two hours before entering their assigned building each day.  If an employee

answered "yes" to any question on the health survey, she would not be allowed to enter the

building and had to be evaluated by a medical provider.  Dr. Wade testified during his deposition

it was PCSD's policy during this time to deduct sick days for non-appearances at work if the

employee did not have a quarantine order.

Plaintiff answered "yes" to a question on the health survey each day, and did not report to

Morse for work on September 9 or thereafter.

On September 28, 2020, Dr. Wade sent plaintiff a letter directing her to report in person

for work at Morse, stating "for each day [plaintiff did] not physically attend, a leave day (sick)

will be deducted from [plaintiff's] accrual."  (Doc. #54-23).

Plaintiff continued not to report to work in person.  However, no sick leave time was

actually deducted in respect of plaintiff's absences.  (See Am. Compl. ¶ 13; Doc. #56-2 ("3020-a

Decision") at 6).

H.    3020-a Proceedings

On November 4, 2020, PCSD brought disciplinary charges against plaintiff under Section

3020-a of the New York Education Law, primarily regarding plaintiff's failure to appear at work

in person ("3020-a Proceedings").  Those charges proceeded to a six-day hearing, during which

time "[b]oth parties were afforded full and fair opportunity to adduce evidence, present

witnesses, conduct direct and cross-examination, make oral argument and otherwise support their respective positions." (3020-a Decision at 11). Plaintiff, at her request, was represented by her husband as a representative of the Coalition. No objection was made as to the conduct of the hearing.

The Hearing Officer sustained seven of the eight remaining charges against plaintiff[8] and determined plaintiff's "failure to report for duty at [Morse] as directed . . . constitute[d] insubordination, misconduct and conduct unbefitting a Teaching Assistant." (3020-a Decision at 30). The Hearing Officer recommended that PCSD suspend plaintiff for four and one-half months without pay, which PCSD implemented.

In her opening statement, plaintiff argued the 3020-a charges were retaliation for her prior claims of race discrimination. (See Doc. #55-3, at 542–44).

I.      Remote Substitute Teaching

For nine days beginning October 26, 2020, plaintiff engaged in remote instruction of a class while the teacher, Ms. Craigg, was absent. Plaintiff was not paid for these days spent remote teaching.

On October 25, 2020, Principal Dargan had informed plaintiff by email that plaintiff would not receive substitute pay if plaintiff filled in for Ms. Craigg. Plaintiff replied on November 19, 2020, stating she did not receive Principal Dargan's October 25 email until after plaintiff had completed remote teaching.

---

[8]      During the proceedings, the parties entered into a settlement agreement with respect to two of the ten charges brought against plaintiff.

Plaintiff was not authorized to work remotely.  Moreover, PCSD contends plaintiff was not authorized to substitute teach at all during this time due to her failure to report for work in person as directed.

Plaintiff informed her union she wanted to file a grievance against PCSD, but her union did not pursue the grievance to arbitration.

In her decision, the Hearing Officer who presided over the 3020-a Proceedings considered plaintiff's argument that she spent these two weeks remote substitute teaching and determined PCSD "advised [plaintiff] she would need documentation if she was seeking to work from home" and "repeatedly and consistently informed [plaintiff] that she must report to her assigned building and [plaintiff] failed to do so."  (3020-a Decision at 40–41).

## DISCUSSION

I.    Standard of Review

The Court must grant a motion for summary judgment if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

A fact is material when it "might affect the outcome of the suit under the governing law . . . .  Factual disputes that are irrelevant or unnecessary" are not material and thus cannot preclude summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A dispute about a material fact is genuine if there is sufficient evidence upon which a reasonable jury could return a verdict for the non-moving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 248.  The Court "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried."  Wilson v. Nw. Mut. Ins. Co., 625 F.3d 54, 60 (2d Cir.

2010).  It is the moving party's burden to establish the absence of any genuine issue of material fact.  Zalaski v. Bridgeport Police Dep't, 613 F.3d 336, 340 (2d Cir. 2010).

If the non-moving party has failed to make a sufficient showing on an essential element of her case on which she has the burden of proof, then summary judgment is appropriate. Celotex Corp. v. Catrett, 477 U.S. at 322–23.  If the non-moving party submits "merely colorable" evidence, summary judgment may be granted.  Anderson v. Liberty Lobby, Inc., 477 U.S. at 249–50.  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation."  Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011).  The mere existence of a scintilla of evidence in support of the non-moving party's position is likewise insufficient; there must be evidence on which the jury could reasonably find for her. Dawson v. County of Westchester, 373 F.3d 265, 272 (2d Cir. 2004).

On summary judgment, the Court construes the facts, resolves all ambiguities, and draws all permissible factual inferences in favor of the non-moving party.  Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003).  If there is any evidence from which a reasonable inference could be drawn in the non-movant's favor on the issue on which summary judgment is sought, summary judgment is improper.  See Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 82–83 (2d Cir. 2004).  Bald assertions, completely unsupported by admissible evidence, are not sufficient to overcome summary judgment.  Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991).

In deciding a motion for summary judgment, the Court need only consider evidence that would be admissible at trial.  Nora Beverages, Inc. v. Perrier Grp. of Am., Inc., 164 F.3d 736, 746 (2d Cir. 1998).

II.     Retaliation Claims

PCSD argues it is entitled to judgment as a matter of law on plaintiff's retaliation claims. The Court agrees.

A.     Legal Standard

Title VII's anti-retaliation provision "forbids employer actions that 'discriminate against' an employee (or job applicant) because he has 'opposed' a practice that Title VII forbids." Burlington N. & Santa Fe Ry. v. White, 548 U.S. at 59 (quoting 42 U.S.C. § 2000e-3(a)). Claims for retaliation under Title VII are governed by the burden-shifting framework laid out in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).

To make out a prima facie case of retaliation under Title VII a plaintiff must show: "(1) she engaged in a protected activity; (2) her employer was aware of this activity; (3) the employer took adverse employment action against her; and (4) a causal connection exists between the alleged adverse action and the protected activity." Summa v. Hofstra Univ., 708 F.3d 115, 125 (2d Cir. 2013).

To establish an adverse employment action for purposes of a retaliation claim, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. v. White, 548 U.S. at 68.

Once a plaintiff presents a prima facie case, the defendant bears the burden of "articulating a legitimate, non-retaliatory reason for the adverse employment action." Ya-Chen Chen v. City Univ. of N.Y., 805 F.3d 59, 70 (2d Cir. 2015). "If the defendant provides such an explanation, the presumption of retaliation dissipates, and the plaintiff must prove 'that the desire

to retaliate was the but-for cause of the challenged employment action.'" Id. (quoting Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 352 (2013)).

This showing of "but-for" causation "does not require proof that retaliation was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive." Zann Kwan v. Andalex Grp. LLC, 737 F.3d 834, 846 (2d Cir. 2013). A plaintiff may prove that retaliation was the but-for cause of an adverse employment action through "evidence comprising her prima facie case, including temporal proximity, together with other evidence such as inconsistent employer explanations, to defeat summary judgment." Id. at 847. However, "a plaintiff cannot merely rationalize, explain, or disagree with an employer's proffered non-discriminatory reasons to survive summary judgment." Ehrbar v. Forest Hills Hosp., 131 F. Supp. 3d 5, 29 (E.D.N.Y. 2015).

B.    Application

Plaintiff brings retaliation claims arising out of: (i) PCSD not assigning plaintiff a summer 2017 ESY Program position, assigning her to substitute for the 2017–2018 after-school program, and not interviewing her for unspecified summer 2018 positions for which she alleges she was qualified; (ii) PCSD allegedly telling PCSD's lawyers, falsely, that plaintiff did not attend an interview for a summer 2017 position, and PCSD's lawyers allegedly withholding plaintiff's settlement demands from the PCSD board during Melton I; (iii) PCSD not granting the Coalition an Empire State Grant in 2017 and 2018; (iv) PCSD declining to provide plaintiff with an air conditioner in the computer lab; (v) PCSD deducting two days of plaintiff's pay when she attended a PERB conference and not paying her for nine days plaintiff spent remote substitute teaching; (vi) PCSD moving plaintiff's computer lab; (vii) PCSD threatening to deduct plaintiff's accrued sick days and threatening to terminate plaintiff's employment when she did not appear

for work in person; (viii) PCSD allegedly destroying relevant evidence from September–November 2020; (ix) PCSD allegedly putting plaintiff, plaintiff's students, and the community at risk of COVID-19 exposure; and (x) PCSD commencing the 3020-a Proceedings against plaintiff.

           1.    <u>Failure to Demonstrate a Prima Facie Case</u>

Plaintiff proffers no evidence with respect to her allegations that PCSD falsely told PCSD lawyers plaintiff did not show up for an interview; PCSD's lawyers withheld plaintiff's settlement demands from the PCSD board; and PCSD put plaintiff, plaintiff's students, and the community at risk of COVID-19 exposure.  <u>See</u> <u>Hicks v. Baines</u>, 593 F.3d 159, 166 (2d. Cir. 2010) ("Mere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist.").

Regardless, even if true, none of these allegations describes an adverse action against plaintiff.  That plaintiff disagrees with the communications or strategy between PCSD and its lawyers, or that PCSD put guidelines in place to respond to the COVID-19 pandemic, are not actions against plaintiff that would dissuade a reasonable employee from engaging in protected conduct.  <u>See, e.g.</u>, <u>Spector v. Bd. of Trs. of Cmty. Tech Coll.</u>, 326 F. App'x 18, 20–21 (2d Cir. 2009) (summary order) (alleged rumors and accusations of misconduct did not comprise adverse action); <u>Shultz v. Congregation Sherith Israel of City of New York</u>, 867 F.3d 298, 309–10 (2d Cir. 2017) (distribution of negative statement after plaintiff commenced lawsuit did not comprise adverse action).  Therefore, to the extent plaintiff continues to pursue these claims, they are dismissed for failure to meet her burden to demonstrate a <u>prima</u> <u>facie</u> case.

Plaintiff's claim that PCSD destroyed evidence relevant to her case is also not supported by the record.  In her Rule 56.1 statement, plaintiff contends the lawyer representing PCSD

during the 3020-a Proceedings tampered with a list of responses to the health survey PCSD

employees were required to fill out before reporting in person to work.  (See Doc. #69 at ECF

265–69).  However, both the "tampered" and the "original" document appear to be the same

Excel spreadsheet, only with different filters applied, and do not support that PCSD destroyed

evidence.  Moreover, even if true, this alleged conduct by PCSD's lawyers during 3020-a

Proceedings would not dissuade a reasonable employee from engaging in protected conduct.

Accordingly, plaintiff cannot demonstrate a prima facie case with respect to this claim and it

must be dismissed.

2.    Legitimate, Non-Discriminatory Reasons for PCSD's Actions

With respect to each of plaintiff's remaining claims, even assuming plaintiff has made

out a prima facie case, PCSD proffers legitimate, non-discriminatory reasons for its actions.

a.    Failure to Hire or Interview

PCSD presented evidence it ascribes to a practice of re-assigning teaching assistants to

the same ESY Program or after-school positions they held during the prior year absent a negative

evaluation or the assistant declining to seek reappointment.  In the event of a vacancy, PCSD

presented evidence it will select a teaching assistant who previously served as a substitute and/or

was actively in touch with Ms. Palmer for the role.  Plaintiff does not dispute that she did not

meet any of these criteria for summer 2017 or 2018 ESY Program positions or for the 2017–2018

permanent after-school positions at Morse.

PCSD also presented evidence it did not appoint plaintiff to an after-school position at

another school because of timing concerns that her school-day duties at Morse would conflict

with the after-school duties at another school.

PCSD also presented evidence showing Maryann Baker, who was hired instead of plaintiff to fill summer 2017 and 2018 roles, was treated as a teaching assistant once the requirements for that role changed and held teaching assistant roles for more than thirty years, notwithstanding that she was originally hired as a teaching aide.  Therefore, the record does not support that unqualified candidates were hired over plaintiff for ESY Program roles.

        b.      <u>Empire Award Grants</u>

PCSD presented evidence that Empire Grant applications are evaluated on a "blind" basis, such that the reviewing members of the Committee would not have known it was the Coalition's application they were reviewing, and denying, for grant funding.

        c.      <u>Computer Lab Claims</u>

PCSD presented evidence that air conditioners are only installed in classrooms upon the request of a faculty member when the faculty member documents a medical need for one or purchases an air conditioner at the faculty member's expense and donates it to the district.

PCSD also presented evidence that plaintiff's computer lab was moved so a new section of special needs students arriving at Morse could use the classroom, and based on the district's changing needs for a computer lab once Morse students were distributed Chromebooks.

        d.      <u>Pay Deductions</u>

PCSD presented evidence that District Policy 6830 requires PCSD employees to obtain superintendent approval prior to seeking reimbursement for attending conferences or meetings as a representative of PCSD.  Plaintiff admitted during her deposition she did not attend the PERB hearing in a representative capacity for the district, and she did not receive approval from PCSD to miss work or to attend the PERB hearing.

PCSD also presented evidence it did not pay plaintiff for time spent remote substitute teaching because she was not authorized to work remotely, and it informed plaintiff in advance she would not be paid if she engaged in remote substitute teaching.

e.      Threat to Deduct Sick Days and 3020-a Proceedings

The 3020-a Hearing Officer determined plaintiff did not report to work beginning September 9, 2020, notwithstanding a clear and reasonable directive from PCSD to do so.  PCSD presented evidence it threatened to deduct sick days from plaintiff's accrual because she continued to refuse to physically appear at work as directed.

Lastly, the Hearing Officer sustained seven of the eight 3020-a charges remaining against plaintiff at the conclusion of the proceedings.  "[A]dministrative charges decided against a plaintiff present[s] legitimate reasons for" the commencement of disciplinary proceedings.  See Senno v. Elmsford Union Free Sch. Dist., 812 F. Supp. 2d 454, 477 (S.D.N.Y. 2011).

3.      Pretext

Plaintiff's evidence, when looked at as a whole and construed in plaintiff's favor, does not support a rational finding that PCSD's proffered legitimate, non-discriminatory reasons were pretextual.

Regarding plaintiff's claims that PCSD did not hire or interview her for certain positions, plaintiff primarily argues PCSD's failure to abide by the CBA's seniority provision demonstrates PCSD retaliated against her.  However, the only admissible evidence in the record demonstrates PCSD uniformly assigned teaching assistants based on service during the prior year or an explicit interest in a role.  For example, Ms. Palmer states she did not consider the relative seniority of any applicant in deciding whom to recommend for summer 2017 ESY program positions:

> [T]he persons I recommended be selected [for summer 2017 ESY Program positions] were either returning teaching assistants who had worked the ESY

> program the prior summer as full-time assignments and had not had a disqualifying
> review or teaching assistants who had actually served the ESY program that prior
> summer as substitute teaching assistants for that summer program and/or, perhaps,
> teaching assistants who had actually been in contact with me on an ongoing basis
> seeking that summer work the prior summer.

(Doc. #58 ¶ 2).  Principal Dargan confirms "reliance upon those criteria has long been the policy of [PCSD] administrators in selecting teaching assistants to be recommended to fill after-school or extended-school-year full-time teaching assistant assignments," and that it informed selection of the teaching assistant who filled the permanent role for the 2017–2018 school year at Morse. (Doc. #57 ¶¶ 4–6).  Likewise, Dr. Cook states seniority, whether district-wide or building-wide, has never played a role in reassigning a teaching assistant in a school building to different duties in a school building. (Doc. #54-4 ¶ 30).

Further, plaintiff has not submitted any evidence PCSD followed seniority as to some employees but not others.  In fact, the teaching assistant assigned to the permanent after-school role at Morse for 2017–2018 had more seniority than plaintiff, as did three professionals plaintiff alleges were hired over her for summer 2018 roles.  Therefore, plaintiff has not met her burden to show that unlawful retaliation was the but-for cause of PCSD's actions in not assigning her or interviewing her for certain roles.

With respect to plaintiff's remaining claims, plaintiff offers no evidence suggesting PCSD's legitimate, proffered reasons for its actions were pretextual and that retaliation was the but-for cause of PCSD's actions.

Therefore, summary judgment for PCSD is warranted, and plaintiff's retaliation claims must be dismissed.

III.   Discrimination Claim

PCSD argues it is entitled to judgment as a matter of law on plaintiff's discrimination claim.

The Court agrees.

A.   Legal Standard

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  Claims for discrimination under Title VII are also governed by the burden-shifting framework laid out in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).

To establish a prima facie case of discrimination, a plaintiff must show "(i) membership in a protected class; (ii) qualifications for the position; (iii) an adverse employment action; and (iv) circumstances surrounding that action giving rise to an inference of discrimination."  Collins v. N.Y.C. Transit Auth., 305 F.3d 113, 118 (2d Cir. 2002).

Once a plaintiff presents a prima facie case, the defendant bears the burden of articulating a legitimate, non-discriminatory reason for the employment action.  Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000).

Once a defendant meets this burden, "[t]o defeat summary judgment, the plaintiff must produce enough evidence to support a rational finding not only that the employer's nondiscriminatory reasons were false but also that more likely than not discrimination was the real reason for the employment actions."  Palencar v. N.Y. Power Auth., 834 F. App'x 647, 650

(2d Cir. 2020).  "In short, the question becomes whether the evidence, taken as a whole, supports a sufficient rational inference of discrimination."  Weinstock v. Columbia Univ., 224 F.3d at 42.

     B.     <u>Application</u>

Plaintiff claims PCSD discriminated against her by not permitting her to complete a training opportunity for a middle school position that two Caucasian candidates were permitted to complete.

Assuming plaintiff has stated a <u>prima facie</u> case, PCSD presented evidence it removed plaintiff from the training because plaintiff informed PCSD she no longer wanted the role.  That two Caucasian employees were permitted to finish the training, which occurred nearly a year after plaintiff last engaged in protected activity, and plaintiff's conclusory allegation that PCSD lied about the events surrounding her removal, are insufficient to support a rational finding that PCSD's proffered legitimate non-discriminatory reasons for removing her from the training were pretextual.  See, e.g., Woods v. Newburgh Enlarged City Sch. Dist., 288 F. App'x 757, 760 (2d Cir. 2008) (plaintiff's disagreement with employer's views of her actions "does not demonstrate the falsity of [the] non-discriminatory reason for her discharge and the probability that racial bias was the real reason for her termination."); Weinstock v. Columbia Univ, 224 F.3d at 45–46 (procedural irregularities and disparate treatment in tenure process insufficient to establish pretext for sex-based discrimination).

Therefore, summary judgment for PCSD is warranted and plaintiff's discrimination claim must be dismissed.

**CONCLUSION**

The motion for summary judgment is GRANTED.

The Clerk is instructed to terminate the motion (Doc. #53) and close this case.

Dated: August 8, 2022
       White Plains, NY

SO ORDERED:

Vincent L. Briccetti
United States District Judge